# CIRCUIT COURT OF BALTIMORE CITY.

Filed March 2, 1914.

THE HOWARD LOAN & SAVINGS ASSOCIATION
VS.
BONIO H. BITTLE.

*Willis and Willis, Laban Sparks* for exceptants.

*Linwood L. Clark* for trustee.

**DAWKINS, J.—**

The exceptant is a judgment creditor of Bonio II. Bittle, who seems to have been the owner of the property sold in this case, subject to two mortgages, one for $20,000, and the other for $4,000, the property having been sold under the second mortgage. The exceptions are based on the alleged secret arrangement between the mortgagor and the mortgagee, whereby the property alleged to be worth $52,000 has been sold, as reported, for $7,400, subject to a mortgage of $20,000. The exceptions are also based upon the ground of the inadequacy of price, as well as upon the fact that the Trustee bought in the property at the sale in his *own name as Attorney for the mortgagee*, and subsequently reported the sale in the name of the Maryland Real Estate and Investment Company, in which the Trustee owns the larger portion of the stock, and because sufficient notice of the time and place of sale was given, for which several reasons the exceptant and other creditors were deprived of the opportunity of asserting their rights in buying the property. Subsequently to or at the time of the hearing a motion was made that the Court ratify the sale to the substituted purchaser, and that the trustee be allowed to correct his report of sale.

This latter motion will be disposed of in disposing of the exceptions.

There is no question about an arrangement having been made so as to enable, if possible, the mortgagor to repossess this property, if it were possible for him to do it, and in saying this, as well as what may be said hereafter, it is the Court's desire to exonerate the mortgagee and mortgagor from any intentional impropriety or improper motive in what they may have done in the premises, there being a desire on the part of the mortgagor apparently to regain his property, if

he could, and the wish on the part of the trustee to protect his clients and at the same time assist the mortgagor, so far as he could, in carrying out his wish.

This arrangement might be absolutely commendable, but the creditors and other persons interested have rights that have to be considered, when they are brought to the Court's attention. It might be properly stated, too, that it is quite a usual thing for this arrangement to be made, as it is also for a trustee to buy in property sold under a mortgage sale. The trustee acted, as I believe he did, in entire good faith, but was not it his duty to let the property be sold to the very best advantage? Was not it his duty to instruct the mortgagor not to disturb the notice on the house, or to do anything that would prevent the benefit obtained from the very best advertising? I can understand how it might be that no one would want that kind of property, but was not it the duty of the trustee to make every effort to obtain a purchaser? A trustee is appointed to represent all parties in interest. These exceptants have the right to have the property sold for all that it will bring, whether they can be bidders or not would not alter the right. The trustee has made a perfectly frank and honorable explanation and he has shown that it was his interest, as it was his duty, to get his clients out free from loss. In this case, there might not be any one fact of sufficient seriousness to disturb this sale, but the several facts taken together might make it proper to have the property again offered for sale. The removal of the sign is a circumstance of advertising that is usual to be resorted to in the City, though not necessary, especially in property such as this. The expert witnesses have fixed the value of the property at around $40,000. The price obtained would not be such a grossly inadequate one as would justify a resale of the property, and yet if property showing an income of 10 per cent gross on $40,000 only brought $27,000, it would seem to be an inadequate price.

Whilst as I have stated, I believe that the trustee acted in perfect good faith and his action alone I do not think would be sufficient to compel the property to be resold, but we must not forget that the trustee is the hand of the Court and it is his duty as he rep-

resents all interested, to offer the property and see that it brings the very best price obtainable and he cannot protect his mortgagee only by making an arrangement merely to the extent of getting his mortgage paid. However, if such an arrangement is made and I have no doubt it is frequently made, yet the trustee does it at his own peril. As was well said in the case of Deford, 82 Md., better that the purchaser lose the benefit of a good bargain than for the parties in interest to suffer by reason of an improper act, or a misconception or neglect of duty or a plain omission of duty and in consequence of which the property may have sold below its real value. No man should be allowed to have an interest against his duty. No one having a fiduciary position and duties to discharge should be allowed to enter into any engagement in which he has or can have a personal interest interfering or which may possibly interfere with the interest of those whom he is bound to protect. Where a trustee is allowed to purchase at his own sale under the Code, allowing mortgagees to purchase at their own sale, there is greater reason for diligent effort on his part to obtain the best price that can be gotten and the Court is called upon to exercise more care and strictness in passing upon sales thus made. Anything savoring of unfairness and calculated to effect injuriously the conduct of the sale or the result thereof is good ground for setting the sale aside.

An agent can not take upon himself at the same time duties incompatible. He can not have any adverse employment. He cannot be both a buyer and a seller. If a trustee cannot act for his own account, he cannot act as agent for a third person. It would make no difference if a sale be made at public auction in perfect good faith and at a fair price, if the trustee becomes interested in the purchase, the sale should be set aside without showing actual wrong.

In what I have said, I am not unmindful of the fact that this property is not such a property as for which a market can be readily found, but whether that is true or not, it does not affect the principle here involved.

It is with a great deal of reluctance that I feel it my duty to do what I have already indicated and in reaching the conclusions which I have, this reluctance is all the more keen, because the trustee seems to have made every reasonable effort to sell this property after Mr. Bittle failed to get himself in the position to take it.

I am not unmindful of the fact, too, of the possibility that a resale might result in additional expense without obtaining any advance in price, so that the exceptants will recover nothing on their judgment, yet I feel that everybody interested should have the chance to have a free and unhampered offer made to the public without anything withheld or any of the usual methods of presenting property to the public not being resorted to, so that there may be no suggestion of any unfairness or failure of the property to bring every dollar it should bring.

Entertaining these views, the motion will be overruled and the exceptions to the ratification of the sale will be sustained.